UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

TYRONE HENDERSON, SR., *et al.*,

     Plaintiffs,

v.                          Civil Action No. 3:20-cv-00294-HEH

THE SOURCE FOR PUBLIC
DATA, L.P., *et al.*,

     Defendants.

## DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO FED. R. CIV. P. 12(C)

Defendants, The Source for Public Data, L.P., d/b/a PublicData.com ("Public Data"), Shadowsoft, Inc. ("Shadowsoft"), Harlington-Straker Studio, Inc., and Dale Bruce Stringfellow (collectively, "Defendants"), by counsel, submit this memorandum in support of their Motion for Judgment on the Pleadings pursuant to Fed. R. Civ. P. 12(c).

### INTRODUCTION

On July 21, 2020, Defendants filed a motion to dismiss Plaintiffs' initial complaint (Dkt. No. 18) on the basis that Defendants are immune from the claims asserted by Plaintiffs, Tyrone Henderson, Sr., George O. Harrison, Jr., and Robert McBride (collectively, "Plaintiffs"), all of which hinge on Public Data's status as a company that makes unaltered public records acquired from federal and state agencies available to members of the public through the internet website Publicdata.com. Specifically, Plaintiffs' claims are barred by the immunity granted to Defendants by the federal Communications Decency Act of 1996, § 230 *et seq.* ("CDA"), which creates "federal immunity to any cause of action that would make service providers liable for [publishing] information originating from a third party." *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997). That immunity is one *from suit* that must be decided at the first logical point in the case.

On August 11, 2020, Plaintiffs filed an Amended Complaint asserting essentially the same claims as in the original complaint.  (*See* Dkt. No. 25.)  Yet, Plaintiffs' Amended Complaint included additional, false allegations attempting to avoid the fact of Defendants' CDA immunity. To that end, Plaintiffs alleged that Public Data "parses," "strips," "alters," and "rewrites" the data made available by government agencies.  Those allegations are demonstrably untrue.  A comparison of the very court data and "reports" that Plaintiffs rely on and integrate into the Amended Complaint contradict their allegations.  And, even with the additional allegations, Defendants' position and immunity afforded under the CDA remains unchanged.

On October 30, 2020, Plaintiffs filed a Second Amended Complaint (the "Complaint"), which was identical to the Amended Complaint except Plaintiffs' putative class definitions are limited to only Virginia residents.[1]  (*See* Dkt. No. 56 at ¶¶ 132-134.)

For the reasons that follow, and consistent with the liberal policies that have been repeatedly affirmed by the Fourth Circuit and courts nationwide in the context of asserted CDA immunity, Plaintiffs' Complaint must be dismissed with prejudice.

### STATUTORY BACKGROUND

In 1996, Congress enacted Section 230 of the CDA, which grants immunity to interactive computer service providers that would impose liability based on third-party content posted on or communicated through the services.  *See* 47 U.S.C. § 230 (b)(1)-(2) ("It is the policy of the United States – (1) to promote the continued development of the Internet and other interactive computer services and other interactive media; [and] (2) to preserve the vibrant and competitive free market that presently exists for the Internet and other interactive computer services, unfettered by Federal or State regulation.").

---

[1] All Complaint references herein are to the operative Second Amended Complaint.

Section 230 implements Congress's legislative policy judgment in two ways.  First, it immunizes interactive computer services from claims seeking to hold them liable for content generated or communicated by third parties: "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."  47 U.S.C. § 230(c)(1).  Second, to enforce that broad immunity, Section 230 bars all suits that seek to hold providers liable for third-party content: "No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section."  47 U.S.C. § 230(e)(3).  Congress took those steps because, in its judgment, "[i]t would be impossible for service providers to screen each of their millions of postings for possible problems," and "[f]aced with potential liability for each message republished by their services, interactive computer service providers might choose to severely restrict the number and type of messages posted."  *Zeran*, 129 F.3d at 330.

Courts construing Section 230 have held that it applies broadly to search engines like Google and Yahoo[2] and publishers of public records and reports like LexisNexis.[3]

## FACTUAL ALLEGATIONS

As Plaintiffs acknowledge, Public Data operates a website, "publicdata.com," where members of the public can submit search queries against databases of public court records. (Second Amended Complaint ("Compl.") ¶¶ 2, 36.)  All available public records are obtained "directly from" government agencies by ShadowSoft.  (*Id.* at ¶ 35.)  For example, among many other agencies, ShadowSoft obtains information directly from the Texas Department of Public

---

[2] *See, e.g., Marshall's Locksmith Serv. Inc. v. Google, LLC*, 925 F.3d 1263 (D.C. Cir. 2019); *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096 (9th Cir. 2009).

[3] *See, e.g., Merritt v. Lexis Nexis Screening Sols., Inc.*, No. 13-CV-10768, 2013 U.S. Dist. LEXIS 89911, at *8-9 (E.D. Mich. June 6, 2013), adopted by *Merritt v. LexisNexis Screening Solutions, Inc.*, No. 13-cv-10768, 2013 U.S. Dist. LEXIS 89849 (E.D. Mich., June 26, 2013).

Safety or Florida Department of Highway Safety and Motor Vehicles.  (*Id.* at ¶¶ 35, 59.)  The records from ShadowSoft are then uploaded onto Public Data's internet servers.  (*Id.* at ¶¶ 4, 58.)  Through publicdata.com, the users of Public Data's software can enter search terms and the information corresponding to the search criteria submitted by the user is then returned in response to the search query.  (*Id.* at ¶¶ 35-36, 89.)  In that sense, the search for public record information on publicdata.com is similar to searching for information on search engines like Google or Yahoo or the federal court system's Public Access to Court Electronic Records ("PACER").  (*Id*. at ¶ 83.)

Plaintiffs' Complaint concedes that ShadowSoft obtains the public information directly from government agencies and that Public Data simply makes that information available through its internet servers.  (*Id.* at ¶ 67) ("Distributing Public Records information via the Internet . . . provides the most current information available.")  As alleged by Plaintiffs, "Defendants purchase and assemble their data from the 'local, state, or federal authorit[ies]'" and obtain their records directly from "state agencies[] and courthouses in all 50 states."  (*Id.* at ¶¶ 81, 92.)  The Complaint also notes that "Public Data is a public records disseminator and is not responsible for any inaccuracies in any database."  (*Id.* at ¶ 99.)

Equally relevant is what *has not* been alleged.  There is no allegation, even in the Amended and Second Amended Complaints, that Public Data creates *the content* of court records, nor could Plaintiffs make such an allegation.  That is because Public Data does not develop content, but instead makes it more convenient for the public to access records government agencies are required to make available under freedom of information laws.  (*Id.* at ¶ 100 ("Public Data['s] . . . policy is to rely solely on complete database updates from the recording government entity.").)

Turning to the Plaintiff-specific allegations, Plaintiffs Henderson and Harrison allege that they requested their "file" from Public Data because of purported "inaccurate information about"

them being returned by third-party background screening companies that they wanted to correct. (*Id.* at ¶¶ 116, 117.)  Neither Plaintiffs allege anything further

Plaintiff McBride then alleges that, in August 2016, Public Data prepared a "report" in connection with his employment application for a "surveyor position" that contained public records that had previously been *nolle prossed*.  (*Id.* at ¶¶ 120-24.)  In particular, Plaintiff McBride alleges that "[t]he background report included numerous entries described as Plaintiff McBride's criminal record, suggesting that Plaintiff McBride had been convicted of each of the offenses listed.  In fact, the report was inaccurate and incomplete as it failed to indicate that several of the offenses listed had been *nolle prossed*."  (*Id.* at ¶ 124.)

Presumably to avoid revealing that his claim has no factual tie to the Richmond Division, Plaintiff McBride does not identify the name of his potential employer in the Complaint, but the identity of that user is obvious based on his prior pleadings.  It was A+ Student Staffing.  *See McBride v. A+ Student Staffing, Inc. et al.*, Case No. 2:18-cv-00424 (E.D. Va. 2018) (Dkt. No. 1 at ¶¶ 19, 24-25) (alleging that, on August 15, 2016, Plaintiff McBride applied for a survey position in Norfolk, Virginia with A+ Student Staffing, which conducted a background check online and denied him on the basis of records that had previously been *nolle prossed*).[4]  In particular, on August 15, 2016, a customer identified as A+ Student Staffing submitted a name search of "Robert" and "McBride" at publicdata.com.  (*See* **Exhibit 1**, Declaration of Dale Bruce Stringfellow ("Stringfellow Decl.") ¶ 4.)  A+ Student Staffing then accessed and viewed at

---

[4] The Court can take judicial notice of these public, party admissions.  *See, e.g., Ramirez v. Wal-Mart Store East, L.P.*, No. 5:13cv442, 2013 U.S. Dist. LEXIS 156429, at *6-7 (E.D.N.C. Sep. 25, 2013) ("Plaintiff has another case pending before this court, filed on September 6, 2012, of which it is appropriate to take judicial notice.  Plaintiff's filings in *Ramirez I* are helpful in understanding what claims Plaintiff is attempting to assert in the present case."); *Norfolk Southern Ry. Co. v. Shulimson Bros. Co., Inc.*, 1 F. Supp. 2d 553, 554 n.1 (W.D.N.C. 1998) (noting that when resolving a motion to dismiss a court may take judicial notice of matters of public record without converting the motion to one for summary judgment).

publicdata.com certain court records matching that full name, which had been previously obtained by Public Data from the Maryland Administrative Office of the Courts. (*Id.*) The Maryland public court records displayed on publicdata.com in response to A+ Student Staffing's name-based search query reflected the *exact same* content that was previously made available to the general public (including Public Data) by the Maryland Administrative Office of the Courts. (*See id.* at ¶¶ 3–4.)

Through all their claims, Plaintiffs allege that Defendants: (1) either published; or (2) failed to publish to them the third-party court records maintained in unaltered form by Public Data. Based on those allegations, however, the CDA immunizes Defendants from Plaintiffs' claims.

## LEGAL STANDARD

Under Fed. R. Civ. P. 12(c), a party may move for judgment on the pleadings after the pleadings are closed, but not so late as to delay trial. The standard for evaluating a motion for judgment on the pleadings is the same as for a Rule 12(b)(6) motion to dismiss. *See Burbach Broad. Co. of Del. v. Elkins Radio Corp.*, 278 F.3d 401, 405 (4th Cir. 2002).

As with a Rule 12(b)(6) motion to dismiss, the complaint's factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). The plaintiff must set forth sufficiently the "grounds of his entitlement to relief," offering more than "labels and conclusions." *Id.* (internal quotation and alterations omitted); *see Young v. City of Mount Ranier*, 238 F.3d 567, 577 (4th Cir. 2001) ("the presence [in a complaint] . . . of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6) when the facts alleged in the complaint cannot support" the necessary legal finding). A court "need not accept the legal conclusions drawn from the facts and . . . need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (quoting *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000)). The court must accept

factual conclusions the plaintiff draws "only to the extent they are plausible based on the factual allegations." *Burnette v. Fahey*, 687 F.3d 171, 180 (4th Cir. 2012).

In considering a Rule 12(c) motion, the court may consider exhibits attached to or referred to in the complaint. *See Occupy Columbia v. Haley*, 738 F.3d 107, 116 (4th Cir. 2013). Where "the bare allegations of the complaint" conflict with any of the plaintiff's exhibits, "the exhibit prevails." *United States ex rel. Constructors, Inc. v. Gulf Ins. Co.*, 313 F. Supp. 2d 593, 596 (E.D. Va. 2004).

The court may also consider and take judicial notice of documents in the public record. *See, e.g., Sec'y of State for Def. v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007) ("[I]n reviewing the dismissal of a Complaint under Rule 12(b)(6), we may properly take judicial notice of matters of public record."). Accordingly, the Court can take notice of the pleadings of the parties, the transcript of any prior proceedings in this case, and the record of this case. *See, e.g., id.*; *Spaine v. Comm. Contacts, Inc.*, 756 F.3d 542, 545 (7th Cir. 2014) ("[W]e may take judicial notice of publicly available records of court proceedings[.]"); *Nguyen ex rel. United States v. City of Cleveland*, 534 F. App'x 445, 448 (6th Cir. 2013) (when faced with a motion under Rule 12(b)(6), "a court may take judicial notice of other court proceedings without converting the motion into one for summary judgment."); *see also* 5B Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1357 (3d ed. 2004) (on a motion under Rule 12(c), a court may consider "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint").

Many courts have applied CDA immunity to dismiss complaints under the identical standard of Fed. R. Civ. P. 12(b)(6). *See, e.g., Directory Assistants v. SuperMedia, LLC,* 884 F. Supp. 2d 446 (E.D. Va. 2012); *Rosetta Stone Ltd. v. Google Inc.*, 732 F. Supp. 2d 628 (E.D. Va.

2010); *see also Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 564 F. Supp. 2d 544, 550 (E.D. Va. 2008) ("[t]he CDA, if applicable, is an appropriate ground for dismissal of the complaint under Rule 12(b)(6) because the Act would preclude [plaintiff] from establishing a set of facts that would entitle it to relief.") (citing *MCW, Inc. v. Badbusinessbureau.com LLC*, No. 3:02cv2727, 2004 U.S. Dist. LEXIS 6678, at *7 (N.D. Tex. Apr. 19, 2004)).  In reaching those conclusions, the courts have placed the burden on a plaintiff to plausibly demonstrate that the CDA does not immunize the defendant from liability.  *See, e.g.*, *Nemet*, 591 F.3d at 256 (assessing "whether the facts pled by Nemet, as to the application of CDA immunity, make its claim that Consumeraffairs.com is an information content provider," and finding that pleading burden was not met).  The same result should occur here.

**A**RGUMENT

Section 230 of the CDA precludes lawsuits seeking to hold an interactive computer service provider liable for content created by its users.  *See* 47 U.S.C. § 230.  Three elements are relevant to immunity under Section 230(c)(1): (1) the defendant claiming immunity must be a "provider . . . of an interactive computer service;" (2) the plaintiff's claims seek to treat the defendant as the "publisher or speaker" of allegedly harmful or unlawful information; and (3) the information at issue was "provided by another information content provider."  47 U.S.C. § 230(c)(1).  The Fourth Circuit has interpreted the scope of § 230 on multiple occasions, holding:

> By its plain language, § 230 creates a federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service.  Specifically, § 230 precludes courts from entertaining claims that would place a computer service provider in a publisher's role.

*Zeran*, 129 F.3d at 330.  The Fourth Circuit has affirmed that the CDA provides immunity both with respect to the display of unaltered content generated by third parties, as well to claims implicating an alleged failure to respond to requests to take action with respect to that same

content.  *Id.* at 328 (affirming CDA immunity where plaintiff claimed that the defendant "delayed in removing defamatory messages posted by an unidentified third party, refused to post retractions of those messages, and failed to screen for similar postings thereafter").

Additionally, "the Fourth Circuit is among the courts that clearly view the § 230 provision as an immunity."  *Hare v. Richie*, No. 11-3488, 2012 U.S. Dist. LEXIS 122893, at *14 (D. Md. Aug. 29, 2012).  CDA "immunity protects websites not only from 'ultimate liability,' but also from 'having to fight costly and protracted legal battles.'"  *Nemet*, 591 F.3d at 254.  Thus, "Section 230 immunity, like other forms of immunity, is generally accorded effect at the first logical point in the litigation process" and must be determined at "the earliest possible stage of the case," such as on a motion to dismiss.  *Id.* at 244-55.

Finally, given the CDA's goal of promoting the development of interactive computer services, "reviewing courts have treated § 230(c) immunity as quite robust, adopting a relatively expansive definition of 'interactive computer service.'"  *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1124 (9th Cir. 2003).  As the Fourth Circuit explained: "Congress made a policy choice . . . not to deter harmful online speech through the separate route of imposing tort liability on companies that serve as intermediaries for other parties' potentially injurious messages . . . ."  *Zeran*, 129 F.3d at 1123-24.

## I.     Public Data is an "interactive computer service."

With this context in mind, the first judicial inquiry when presented with a question of CDA immunity is whether the defendant provides an "interactive computer service."  Section 230 defines an "interactive computer service" as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including

specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions."  47 U.S.C. § 230(f)(2).

Courts construing Section 230(f)(2) have recognized that this statutory definition is broadly construed and includes a wide range of computer services, including websites that function "as an intermediary by providing a forum for the exchange of information between third party users." *See, e.g., Doe v. MySpace, Inc.*, 474 F.Supp.2d 843, 849 (W.D. Tex. 2007); *Roberts v. eBay Inc.*, No. 6:14cv4904, 2017 U.S. Dist. LEXIS 121577, at *15 (D.S.C. July 14, 2017) ("The CDA establishes immunity for providers of interactive computer services that provide an online platform allegedly used by third-parties . . . ."). Additionally, "an interactive service provider who solicits, pays for, edits, and generally maintains active control over the content of its website may [still] continue to assert immunity from liability." *Nasser v. WhitePages, Inc.*, No. 5:12cv97, 2012 U.S. Dist. LEXIS 184525, at *25 (W.D. Va. Dec. 20, 2012); *Universal Communication Systems, Inc. v. Lycos, Inc.*, 478 F.3d 413, 422 (1st Cir. 2007) (the CDA protected the defendant's "inherent decisions about how to treat postings generally").

Here, as Plaintiffs concede in their Complaint, Public Data is a provider of an interactive computer service because Public Data is an online platform that "assemble[s] . . . all of the public records and upload[s] them onto Public Data's internet servers[.]" (Compl. ¶ 4.) Plaintiffs further allege that Public Data obtains public records "it purchased directly" from state government agencies and provides access to members of the public who submit search queries. (*Id.* at ¶ 35.) It is undisputed that Public Data is a provider of interactive computer service because its domain provides users "access to the information over the Internet." (*Id.* at ¶ 41.) Plaintiffs allege that "Defendants obtain and assemble the information for the purpose of providing it to third parties, who then obtain and use the information from Defendants' website[.]" (*Id.* at ¶ 89.) Thus, Public

Data qualifies as an interactive computer service, meeting the first prong of the immunity test.[5] *See, e.g., Liberi v. Taitz*, No. 11-0485, 2011 U.S. Dist. LEXIS 166986, at *35 (C.D. Cal. Oct. 17, 2011) (finding Reed Elsevier, Inc. and Intelius, Inc. to be "internet service providers" when plaintiffs agreed that they obtained public information in their online consumer databases from state and federal government agencies, mortgage companies, banks, and credit bureaus).

**II.     Plaintiffs treat Public Data as the "publisher or speaker" of the relevant information.**

"[Section] 230 precludes courts from entertaining claims that would place a . . . service provider in a publisher's role." *Directory Assistants v. SuperMedia, LLC*, 884 F. Supp. 2d 446, 450 (E.D. Va. 2012). It is indisputable that Plaintiffs' Complaint explicitly treats Public Data as the "publisher or speaker" of the allegedly harmful information. Plaintiffs allege that "Public Data is operated by . . . Shadowsoft, who purchases and assembles the public records and then *publishes* them on Public Data's server." (Compl. ¶ 58 (emphasis added).)

The alleged conduct of Defendants is the very conduct that Congress chose to immunize by Section 230. Plaintiffs attempt to hold Defendants liable for the actions quintessentially related to a publisher's role. Accordingly, Plaintiffs' characterization of Defendants as the "publisher or speaker" of the allegedly harmful statements avail Defendants of Section 230 immunity. *See, e.g., Barnes*, 2005 U.S. Dist. LEXIS 28061, at *4 ("Any such claim [of inaccuracy] by [the Plaintiffs] necessarily treats the [Defendant] as publisher of the content and is therefore barred by § 230.").

**III.    Public Data is not an "information content provider" by compiling public records.**

"Assuming a [defendant] meets the statutory definition of an 'interactive computer service provider,' the scope of § 230 immunity turns on whether that person's actions also make it an

---

[5] The plaintiff in *Zeran* also alleged that AOL failed to screen for postings with inaccurate information. Similarly, Plaintiffs in this matter alleges that Public Data failed to follow reasonable procedures to assure that the "report" was accurate. (*See* Compl. ¶ 131.)

'information content provider.'"  *Nemet*, 591 F.3d at 254.  The CDA defines an "information content provider" as "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service."  47 U.S.C. § 230(f)(3).

Interactive websites only lose CDA immunity if they "materially contribut[e]" content; it is not enough if they merely compile the information.  *See, e.g.*, *Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1162 (9th Cir. 2008) (*en banc*); *see also Prickett v. infoUSA, Inc.*, 561 F. Supp. 2d 646, 649, 652 (E.D. Tex. 2006) (finding defendant, who compiles, disseminates, and distributes databases containing information about businesses and consumer households through the internet, immune under the CDA because the information it publishes is obtained from third parties and transferred unaltered into its database); *Carafano*, 339 F.3d at 1122 ("Through [Section 230], Congress granted most internet services immunity from liability for publishing false or defamatory material so long as the information was provided by another party.").

In *Nemet*, for instance, the Fourth Circuit refused to hold consumeraffairs.com liable from publication of false information that it did not create.  Absent a showing that consumeraffairs.com contributed to the allegedly false information, the Fourth Circuit held that consumeraffairs.com could not be an information content provider.  591 F.3d at 258 ("[Plaintiff] was required to plead facts to show any alleged drafting or revision by Consumeraffairs.com was something more than a website operator performs as part of its traditional editorial function.  It has failed to plead any such facts.").  Likewise, Plaintiffs' Complaint *does not allege* that Public Data played any part in materially altering the information it obtained from other third parties.  To the contrary, Plaintiffs' Complaint concedes that Public Data merely retrieves and transmits public court records obtained directly from government entities.  (*See, e.g.,* Compl. ¶¶ 4, 81, 92.)  In that capacity, much like

PACER, Public Data displays results responsive to the query submitted without further evaluation, commentary, or material contribution/alteration.  (*Id.*)

Under those facts, Plaintiffs have not met their burden to plausibly plead that Public Data meets the definition of an internet content provider, and Defendants thus cannot be held liable for any allegedly inaccurate information originating from third parties or the Defendants' alleged failure to publish that information to Plaintiffs in response to their requests  Indeed, that court record information that lies at the heart of each of Plaintiffs' claims, which is publicly available, necessarily originated with another content provider.  *See, e.g.*, *Merritt*, 2013 U.S. Dist. LEXIS 89911 at *8-9 (granting motion to dismiss under CDA when plaintiff alleged that LexisNexis disseminated information to third parties in a report that contained multiple alleged inaccuracies); *Prickett*, 561 F. Supp. 2d at 652 ("Here, critical information concerning the Plaintiffs' names, address and home telephone number as well as the alleged business names were transferred unaltered.  Further, the type of businesses listed stemmed not from the Defendant's prompts but, rather, from the anonymous third party's classification.  As such, the Defendant did not play a significant role in creating or developing the information at issue."); *Liberi*, 2011 U.S. Dist. LEXIS 166986, at *35-36 ("The Reed and Intelius Defendants do not create the [public record] content, they provide a service that allows internet users to access that third-party content.  Even if the Reed and Intelius Defendants create some content on their websites, they did not create the content at issue here.  They did not, for example, generate the social security numbers for Plaintiffs.  Incorrectly reporting or gathering third-party information does not qualify as creating content under the CDA.").

## IV.   Plaintiffs' Complaint does not affect Defendants' CDA immunity.

Seeking to avoid dismissal on CDA immunity grounds, Plaintiffs added numerous false allegations to their Complaint.  These include the following, new claims:

- Defendants "parse" the public records obtained from local, state, or federal authorities and alter it into an original proprietary format.  (Compl. ¶ 82.)

- Defendants "manipulate" the public record data into a different, "summarized format."  (*Id*. ¶¶ 84, 87.)

- Defendants "strip our or suppress" information from the public records and replace with their own summaries.  (*Id*. ¶¶ 85-86.)

- "In essence, Defendants re-write the court records into their own, original entries into their reports."  (*Id*. ¶ 88.)

As noted above, however, even these allegations do not defeat CDA immunity, as there is no question that Public Data is an internet service provider and there is still no allegation that Public Data added any *content* to the records put at issue by Plaintiff McBride.

Assuming *arguendo* that the new allegations are relevant to the CDA calculus, they are discredited by the documents expressly integrated into the Complaint.  Those relevant documents consist of: (1) the raw data received by Public Data from the Maryland court system; and (2) the correlating records identified in response to the August 15, 2016 search query by A+ Student Staffing at publicdata.com.  Those documents are attached as Exhibits A and B to the declaration of Mr. Stringfellow (*See* Stringfellow Decl. ¶¶ 3–4), and they invalidate Plaintiffs' claims.

Initially, it is well settled that a "court may properly consider documents that are referenced in a complaint in connection with a motion under Rile 12(c) or Rule 12(b)(6).  *See, e.g.*, *E.I. du Pont de Nemours & Co. v. Kolon Indus.*, Inc., 637 F.3d 435, 448 (4th Cir. 2011); *see also Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999) (stating that "a court may consider [a document outside the complaint] in determining whether to dismiss the complaint" where the document "was integral to and explicitly relied on in the complaint").  "The rationale underlying this exception is that the primary problem raised by looking to documents outside the complaint . . . is dissipated

where plaintiff . . . has relied upon these documents in framing the complaint." *Am. Chiropractic v. Trigon Healthcare*, 367 F.3d 212, 234 (4th Cir. 2004).

In assessing whether a document should be considered "integral" to the complaint, the relevant inquiry is whether the plaintiff's "claims . . . turn on, or are . . . otherwise based on, statements contained in the [document]." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (citing *Smith v. Hogan*, 794 F.3d 249, 255 (2d Cir. 2015)); *see also Blankenship v. Manchin*, 471 F.3d 523, 526 n.1 (4th Cir. 2006) (finding that the documents not attached to the complaint was integral when facts in the complaint relied on information included in the documents). Here, the documents reflecting the raw public record data from the Maryland court system and the corresponding data displayed on publicdata.com are clearly integral to, *and in fact form the basis of*, Plaintiffs' contention that Public Data "assembles or evaluates" consumer data, which is requirement to be a "consumer reporting agency" in the first instance. (*See* Compl. ¶ 17) (citing 15 U.S.C. § 1681a(f).) Indeed, Plaintiffs spend many paragraphs of their Complaint addressing the content of the data displayed on publicdata.com compared to the data that originated with government agencies. (*See id*. ¶¶ 78-91.)

With those documents properly before the Court, the falsity of Plaintiffs' allegations is laid bare. The raw data from the Maryland court system matches *verbatim* to the court records that were displayed to A+ Student Staffing on publicdata.com. (*See* Stringfellow Decl., ¶¶ 3–4.) Public Data did not "rewrite," "parse," "alter," or "strip" the records made available to the public, as somehow claimed by Plaintiffs. Hence, Plaintiffs' false allegations should not be credited. *See, e.g., Pittman v. Deutsche Bank Nat'l Trust Co.*, No. 18-2425, 2019 U.S. Dist. LEXIS 131134, at *2 n.1 (D. Md. Aug. 5, 2019) ("background facts are presumed to be true, except where flatly contradicted by documents attached to Defendants' Motion to Dismiss"); *Rieger v. Drabinsky*, 151

F. Supp.2d 371, 405-6 (S.D.N.Y. 2001) ("A court need not feel constrained to accept as truth conflicting pleadings . . . that are contradicted . . . by documents upon which its pleadings rely.").

## V.     The CDA Does Not Make an Exception for the FCRA, which is also Inapplicable.

As a final matter, Plaintiffs included allegations in the Complaint previewing their contention that the FCRA is somehow an exception to CDA immunity.  (*See* Compl. ¶ 105.) Congress, however, set out specific exceptions to the CDA.  The FCRA – which was enacted decades before the CDA – is *not* one of them.[6]  The CDA, as explained by the Fourth Circuit in *Nemet* and *Zeran*, provides a broad immunity from suit, regardless of the cause of action asserted.

Moreover, even if Plaintiffs' legal position had any merit (which it does not), Exhibits A and B to the declaration of Mr. Stringfellow confirm that the FCRA does not apply to Public Data, which displayed unaltered public records from the Maryland Administrative Office of the Court. (*See* Stringfellow Decl., ¶¶ 3–4.)  A litany of cases and regulatory authority confirm that result. *See, e.g.*, Federal Trade Commission, "40 Years of Experience with the Fair Credit Reporting Act: An FTC Staff Report with Summary of Interpretations," 2011 WL 3020575, at *22 (July 2011) ("An entity that performs only mechanical tasks in connection with transmitting consumer information is not a CRA because it does not assemble or evaluate information."); *see also, e.g., Mix v. JPMorgan Chase Bank, NA*, No. 15-01102, 2016 U.S. Dist. LEXIS 139095, *13-14 (D. Ariz. Oct. 6, 2016) (receiving and then transmitting "fingerprint results from the FBI" database cannot give rise to FCRA liability); *Smith v. Busch Entm't Corp.*, No. 3:08-772, 2009 WL 1608858, at *3 (E.D. Va. June 3, 2009) (holding that the "Virginia State Police Central Criminal Records

---

[6] Section 230 expressly provides that the immunity provisions will not apply in certain types of lawsuits, including: (1) federal criminal laws; (2) intellectual property laws; (3) any state law that is "consistent with" Section 230; (4) the Electronic Communications Privacy Act of 1986; and (5) certain civil actions or state prosecutions where the underlying conduct violates specified federal laws prohibiting sex trafficking.  47 U.S.C. § 230(e).

Exchange" is not a consumer reporting agency when it "provides employers [with] criminal conviction data on employees or prospective employees"); *Ori v. Fifth Third Bank, & Fiserv, Inc.*, 603 F. Supp. 2d 1171, 1175 (E.D. Wisc. 2009) ("Obtaining and forwarding information does not make an entity a CRA."); *D'Angelo v. Wilmington Med. Ctr., Inc.*, 515 F. Supp. 1250, 1253 (D. Del. 1981) (the FCRA's assembling or evaluating requirement "implies a function which involves more than receipt and retransmission of information").  Therefore, even if the FCRA did somehow provide an exception to the CDA, the FCRA has no role here.

CONCLUSION

WHEREFORE, Defendants respectfully request that the Court enter an order: (1) granting Defendants' Motion; (2) dismissing Plaintiffs' claims against Defendants with prejudice under Fed. R. Civ. P. 12(c); and (3) granting such further relief as the Court deems appropriate.

**THE SOURCE FOR PUBLIC DATA, L.P., D/B/A PUBLICDATA.COM, SHADOWSOFT, INC., HARLINGTON-STRAKER STUDIO, INC., AND DALE BRUCE STRINGFELLOW**

By: */s/Timothy J. St. George*
    David N. Anthony
    Virginia State Bar No. 31696
    Timothy J. St. George
    Virginia State Bar No. 77349
    H. Scott Kelly
    Virginia State Bar No. 80546
    *Counsel for Defendants*
    TROUTMAN PEPPER HAMILTON SANDERS LLP
    1001 Haxall Point
    Richmond, VA  23219
    Telephone: (804) 697-1254
    Facsimile: (804) 698-6013
    Email: david.anthony@troutman.com
    Email: tim.stgeorge@troutman.com
    Email: scott.kelly@troutman.com

    Ronald I. Raether, Jr. (admitted *pro hac vice*)
    TROUTMAN PEPPER HAMILTON SANDERS LLP
    5 Park Plaza, Suite 1400
    Irvine, California 92614
    Telephone: (949) 622.2722
    Facsimile: (949) 622.2739
    Email: ron.raether@troutman.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of November 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will then send a notification of such filing (NEF) to the following:

Kristi C. Kelly
Andrew J. Guzzo
Casey S. Nash
KELLY GUZZO PLC
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
Telephone: 703-424-7570
Facsimile: 703-591-9285
Email: kkelly@kellyguzzo.com
Email: aguzzo@kellyguzzo.com
Email: casey@kellyguzzo.com
*Counsel for Plaintiffs*

Dale W. Pittman
THE LAW OFFICE OF DALE W.
PITTMAN, P.C.
112-A W Tabb St
Petersburg, VA 23803-3212
Telephone: 804-861-6000
Facsimile: 804-861-3368
Email: dale@pittmanlawoffice.com
*Counsel for Plaintiffs*

Leonard A. Bennett
Craig C. Marchiando
Amy L. Austin
CONSUMER LITIGATION ASSOCIATES
763 J Clyde Morris Boulevard
Suite 1A
Newport News, VA 23601
Telephone: 757-930-3660
Facsimile: 757-930-3662
Email: lenbennett@clalegal.com
Email: craig@clalegal.com
Email: amyaustin@clalegal.com
*Counsel for Plaintiffs*

*/s/ Timothy J. St. George*
Timothy J. St. George
Virginia State Bar No. 77349
*Counsel for Defendants*
TROUTMAN PEPPER HAMILTON SANDERS LLP
1001 Haxall Point
Richmond, VA  23219
Telephone: (804) 697-1254
Facsimile: (804) 698-6013
Email: tim.stgeorge@troutman.com

111295709