## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

TYRONE HENDERSON, SR., *et al.*,    )
                             )
        Plaintiffs,        )
                             )
v.                           )     Civil Action No. 3:20-cv-294–HEH
                             )
THE SOURCE FOR PUBLIC DATA,    )
*et al.*,                         )
                             )
        Defendants.     )

### MEMORANDUM OPINION
#### (Granting Defendants' Motion for Judgment on the Pleadings)

This matter is before the Court on Defendants' Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c). ("Motion," ECF No. 63.) The principal issue before the Court is entirely novel: does 47 U.S.C. § 230 of the Communication and Decency Act apply to claims raised pursuant to the Fair Credit Reporting Act ("FCRA")? The parties have submitted memoranda supporting their respective positions, and the Court heard oral argument on January 5, 2021. For the reasons stated below, the Court will grant the Motion and dismiss the case.

### I.   BACKGROUND

Tyrone Henderson ("Henderson"), George O. Harrison, Jr. ("Harrison"), and Robert McBride ("McBride," collectively "Plaintiffs") filed their Second Amended Complaint on October 30, 2020, alleging that The Source for Public Data, L.P., Shadowsoft, Inc., Harlington-Straker Studio, Inc., and Dale Bruce Stringfellow ("Defendants") violated the FCRA by including inaccurate criminal information on

background check reports Defendants produced. (Second Am. Compl., ECF No. 56.)
Defendants operate a website, publicdata.com, that allows customers to search through
various databases available via the site. (*Id.* ¶¶ 67, 83.) Defendants can pull this
information into a report. (*Id.* ¶¶ 84, 85.) Plaintiffs assert that Defendants purchase,
collect, and assemble public record information into reports, which employers then buy
from Defendants via their website. (*Id.* ¶¶ 81–82.) Generally, "Defendants obtain their
public records from vendors, state agencies, and courthouses." (*Id.* ¶ 92.) Defendants
purportedly "strip out or suppress all identifying information relating to [any criminal]
charges." (*Id.* ¶ 85.) After these alterations, Defendants then use "their own internally
created summaries of the charges." (*Id.* ¶ 86.) As Defendants' customers "ask a general
question" such as if "there [are] any criminal convictions anywhere that match this
applicant," Plaintiffs aver that "Defendants affirmatively sort, manipulate and infer
information to adapt data results to the requests received." (*Id.* ¶ 87.) In sum, Plaintiffs
maintain that "Defendants rewrite the court records into their own original entries into the
report." (*Id.* ¶ 88.)

   Each Plaintiff alleges various inaccuracies on Defendants' reports as well as other
FCRA violations. Henderson claims that he applied to numerous positions but was
denied employment due to a criminal history that belongs to another person with the
same name. (*Id.* ¶¶ 113–14.) Henderson requested a copy of his criminal background
check report from Defendants multiple times, including on December 11, 2019, February
12, 2020, and March 12, 2020. (*Id.* ¶¶ 116–17.) Defendants did not send the requested
report and responded that they were not governed by the FCRA. (*Id.* ¶ 117.) Harrison

also alleges that there was inaccurate information reflected on his report that prevented him from obtaining employment or rental housing. (*Id.* ¶ 118.) He requested a full copy of his criminal background check report from Defendants on December 19, 2019, but they did not respond to Harrison's request. (*Id.*) McBride also requested a complete copy of his criminal background check report from Defendants on February 26, 2019, and January 24, 2020. (*Id.* ¶ 119.) McBride applied for a surveyor position in Virginia and the potential employer requested a background report from Defendants. (*Id.* ¶ 120.) McBride believes that the report contained numerous inaccuracies, such as several criminal offenses that were dismissed in state court, and was denied employment as a result. (*Id.* ¶¶ 124, 127.) McBride alleges that Defendants failed to provide a copy of the report after both of his requests. (*Id.* ¶¶ 119, 128.)

Plaintiffs bring a class action lawsuit, alleging that Defendants provided numerous reports for individuals in Virginia that contained false or inaccurate information. Plaintiffs state three claims jointly, alleging violations of §§ 1681g;[1] 1681k(a);[2]

---

[1] Section 1681g allows a person to request their file from a "consumer reporting agency" including all information in the file and the name of any person who requested the information within the past two years if procured for employment purposes or within the past year for any other reason.

[2] Section 1681k(a) requires that a "consumer reporting agency" that provides a report containing public record information that may have an adverse effect upon employment must either notify that the information was given and the name and address of the requester, or have procedures that ensure the information is complete and current.

1681b(b)(1).[3]  McBride brings one claim individually for a violation of 15 U.S.C. § 1681e(b).[4]

In support of their Motion, Defendants argue that Plaintiffs' claims are precluded under § 230. (Defs.' Mem. Supp. at 1–2, ECF No. 64.)  Defendants allege that they have satisfied the elements of § 230 immunity because they are an interactive computer service and Plaintiffs treat Defendants as the publisher of a third-party's content. (Defs.' Mem. Supp. 10–11.)  Moreover, they argue that because § 230 specifically lists several exemptions and FCRA is not among them, § 230 applies.  (*Id.* at 16–17.)  In response, Plaintiffs argue that Defendants do not satisfy the requirements for § 230 immunity and that the immunity should not apply to the FCRA. (Pls.' Opp'n Mem. 1–3, ECF No. 68.)

## II.   STANDARD OF REVIEW

The standard for reviewing a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) utilizes the same standard as a motion made pursuant to Rule 12(b)(6).  *Burbach Broad. Co. v. Elkins Radio Corp.*, 278 F.3d 401, 405–06 (4th Cir. 2002); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  "In reviewing a motion to dismiss for failure to state a claim, [a court] must 'accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff.'"  *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (quoting *King v.*

---

[3] Section 1681b(b)(1) requires that a "consumer reporting agency" obtain a certification from the requesters showing that they complied with the FCRA and that the information will not be used in violation of any law.  The "consumer reporting agency" must also provide a summary of the consumer's rights when producing the report.

[4] Section 1681e(b) requires that "a consumer reporting agency" follow reasonable procedures to ensure accuracy in its reports.

*Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016)).  A Rule 12(b)(6) motion "does not

resolve contests surrounding facts, the merits of a claim, or the applicability of defenses."

*Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013) (quoting *Republican Party of N.C. v.

Martin*, 980 F.2d 943, 952 (4th Cir. 1992)).  "A complaint need only 'give the defendant

fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Ray*, 948 F.3d

at 226 (alteration in original) (quoting *Tobey,* 706 F.3d at 387).  However, a "complaint

must provide 'sufficient factual matter, accepted as true, to state a claim to relief that is

plausible on its face.'"  *Turner v. Thomas*, 930 F.3d 640, 644 (4th Cir. 2019) (quoting

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "Allegations have facial plausibility 'when

the plaintiff pleads factual content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged.'"  *Tobey*, 706 F.3d at 386 (quoting

*Iqbal*, 556 U.S. at 679).  A court, however, "need not accept legal conclusions couched as

facts or unwarranted inferences, unreasonable conclusions, or arguments."  *Turner*, 930

F.3d at 644 (quoting *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012)).

Generally, the district court does not consider extrinsic materials when evaluating

a complaint under Rule 12(b)(6).  The court, however, may consider "documents

incorporated into the complaint by reference," *Tellabs, Inc. v. Makor Issues & Rights,

Ltd.*, 551 U.S. 308, 322 (2007), in addition to documents "attached to the motion to

dismiss, so long as they are integral to the complaint and authentic." *Fusaro v. Cogan*,

930 F.3d 241, 248 (4th Cir. 2019) (quoting *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d

176, 180 (4th Cir. 2009)).  "[I]n the event of conflict between the bare allegations of the

complaint and any exhibit attached . . . , the exhibit prevails." *Goines v. Valley Cmty.*

*Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (alteration in original) (quoting *Fayetteville Inv'rs v. Com. Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991)). This is based on "the presumption that the plaintiff, by basing his claim on the attached document, has adopted as true the contents of that document." *Id.* at 167. However, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it," as well as whether plaintiff relied on the attachment for its truthfulness. *See id.* at 167–69; *see also Wallace v. Baylouny*, No. 1:16-cv-47, 2016 WL 3059996, at *4 (E.D. Va. May 31, 2016).

## III.  DISCUSSION

### A. The Documents Attached to Defendants' Motion Are Not Incorporated by Reference into the Complaint

Defendants attached several documents to their Motion with an affidavit supporting authenticity: first, an example of data Defendants receive from the Maryland Court system, and second, the records A+ Student Staffing viewed after a search on Defendants' website on August 15, 2016. (Defs.' Mem. Supp. 14.)[5] Defendants allege that these documents are incorporated by reference into the Second Amended Complaint. (*Id.*) Plaintiffs object to this evidence, claiming it is not authentic and hearsay pursuant to the Federal Rules of Evidence. (Pls. Opp'n Mem. 10–13.)

---

[5] According to Defendants, A+ Student Staffing requested a background check report for McBride after he allegedly applied for a surveyor position. (Defs.' Mem. Supp. 14–15.)

The Court cannot consider either document attached to the Motion as neither is incorporated by reference into the Second Amended Complaint.[6]  For a document to be incorporated by reference into a complaint, there must be explicit language referring to the documents. *Philips*, 572 F.3d at 180.  Although the Second Amended Complaint makes several general references as to how Defendants obtain criminal history information and references to sources of public records, and other agencies from which Defendants have obtained records, there is no specific reference to any Maryland court database or system. (*See, e.g.*, Second Am. Compl. ¶¶ 4–7, 11, 26–28, 33, 85.) Furthermore, there is a generic discussion regarding McBride's prior attempt to obtain employment as a surveyor, a background check report his potential employer utilized, and mention of some information in the report, but there is no reference that the employer is A+ Student Staffing nor that the report at issue was generated on August 16, 2016. (*See id.* ¶¶ 13, 84–86, 120, 122.)  Moreover, Plaintiffs have not relied on these documents for their truthfulness, and indeed, object to validity of these documents. *See Goines*, 822 F.3d at 167–69.  Therefore, the Court finds that these documents are not incorporated by reference.

### B. Section 230 Applies to Defendants

Though application of § 230 to the FCRA is a novel issue, the United States Court of Appeals for the Fourth Circuit has discussed § 230 at length and its analysis will guide this Court's hand in navigating this novel question.  The language of § 230 is clear: "[n]o

---

[6] As the Court will find that these documents are not incorporated by reference into the Second Amended Complaint, the Court need not address Plaintiffs' hearsay and authenticity objections.

provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." § 230(c)(1). Phrased another way, an interactive computer service shall not be held liable for content they do not create. § 230(c). In *Zeran v. American Online, Inc.*, the Fourth Circuit explained that, "[b]y its plan language, § 230 creates a federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service." 129 F.3d 327, 330 (4th Cir. 1997). "Congress thus established a general rule that providers of interactive computer services are liable only for speech that is properly attributable to them." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 254 (4th Cir. 2009). Thus, in this circuit, § 230 provides interactive computer services immunity from suit regarding information originating from third parties.

Importantly, Congress also enumerated five exceptions to immunity, expressly stating that § 230 cannot have any effect on any "[f]ederal criminal statute," "intellectual property law," "[s]tate law that is consistent with this section," "the Electronic Communications Privacy Act," or "sex trafficking law." § 230(e)(1)–(5). Pursuant to the canon of statutory construction of *expressio unius est exclusio alterius*, "[w]here Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent." *TRW, Inc. v. Andrews*, 534 U.S. 19, 28 (2001). Congress plainly chose five exceptions to § 230 immunity and did not include the FCRA among them. *See* § 230(e). Accordingly, by its plain language, § 230 can apply to FCRA claims.

Other courts have interpreted the plain language of § 230 broadly. *See, e.g.,*

*Malwarebytes, Inc. v. Enigma Software Grp. USA, LLC*, 141 S. Ct. 13, 13 (2020)

(Thomas, J., respecting denial of certiorari) ("[C]ourts have construed [§ 230] broadly to

confer sweeping immunity."). For example, "the Fourth Circuit has held that when . . . a

service provider [is] not an information content provider, [§ 230] precludes liability for

defamation, tortious interference with business expectancy, and violations of the Lanham

Act because the owner of the site did not contribute to the allegedly fraudulent nature of

the comments at issue." *Directory Assistants v. Supermedia, LLC*, 884 F. Supp. 2d 446,

450 (E.D. Va. 2012) (citing *Nemet*, 591 F.3d at 257–58). When the content at issue

originates from a third party, defendants have also been afforded § 230 immunity in other

federal statutory causes of actions. *E.g., Chicago Lawyers' Comm. for C.R. Under L.,*

*Inc. v. Craigslist, Inc.,* 519 F.3d 666, 671 (7th Cir. 2008), *as amended* (May 2, 2008)

(The Fair Housing Act); *Nat'l Assoc. of the Deaf v. Harvard Univ.*, 377 F. Supp. 3d 49,

66 (D. Mass. 2019) (Title III of the Americans with Disabilities Act and Section 505 of

the Rehabilitation Act); *Noah v. AOL Time Warner, Inc.*, 261 F. Supp. 2d 532, 539 (E.D.

Va. 2003) (Title II of the Civil Rights Act of 1964).

By contrast, the Fourth Circuit recently declined to extend § 230 immunity for a

product liability claim when the defendant published a third-party seller's advertisement

in an electronic marketplace. *Erie Ins. Co. v. Amazon.com, Inc.*, 925 F.3d 135, 140 (4th

Cir. 2019). As the claims were "not based on the publication of another's speech," the

court held that § 230 could not apply because "the Communications Decency act protects

interactive computer service providers from liability *as a publisher of speech*, [but] it

9

does not protect them from liability as the seller of a defective product." *Id.* at 139–40. Unlike in *Erie Insurance*, Plaintiffs here seek to hold Defendants liable for the content on their website. *See id.* Thus, § 230 can apply to Plaintiffs' FCRA claims.

Plaintiffs' sole support for their argument that § 230 generally cannot apply to the FCRA is an unpublished case from the Central District of California. *Liberi v. Taitz*, No. SACV 11-0485, 2011 WL 13315691 (C.D. Cal. Oct. 17, 2011). After finding the plaintiffs' claims barred under the FCRA and the California equivalent, the *Liberi* court further reasoned that the claims would also be precluded by § 230 immunity. *Id.* at *10–11. Plaintiffs argue that this case signifies that § 230 and the FCRA are mutually exclusive because the *Liberi* court analyzed § 230 separately from the FCRA. (Pls.' Mem. Opp'n 29–30.) Plaintiffs' argument, based upon inferences and assumptions from dicta in an unpublished Central District of California case, is unpersuasive, particularly when the language of the statute and Fourth Circuit precedent are clear.[7]

It is evident that, although § 230 can apply to FCRA claims, this Court must consider whether all the elements are met to determine if Defendants are entitled to immunity under § 230. There are three requirements to successfully assert § 230 immunity: (1) a defendant is an interactive computer service; (2) the content is created by an information content provider; and (3) the defendant is alleged to be the creator of

---

[7] Defendants cite *Merritt v. Lexis Nexis*, No. 12-12903, 2012 WL 6725882 (E.D. Mich. Oct. 23, 2012), *report and recommendation adopted by* No. 12-12903, 2012 WL 6725881 (E.D. Mich. Dec. 27, 2012), as holding that FCRA claims are precluded under § 230 but this is a misunderstanding. Despite the plaintiff's claims, the district court did not find that the plaintiff stated a FCRA claim, and thus adopted the magistrate's report and recommendation to dismiss the complaint as barred by § 230. *Merritt*, 2012 WL 6725881, at *2, * 4–5.

the content. *Nemet*, 591 F.3d at 254. Based on the facts at hand, Defendants have satisfied all three elements.

First, an "interactive computer service" is "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions." § 230(f)(2). In other words, interactive computer services are "websites that do not generate original content but rather allow users to access the website in order to post information." *Baldino's Lock & Key Serv., Inc. v. Google, Inc.*, 88 F. Supp. 3d. 545, 547 (E.D. Va. 2015) (citing *Nemet*, 591 F.3d at 255) (finding the defendant to be an interactive computer service for operating "a website that allows consumers to comment on the quality of businesses, goods, and services"). An interactive computer service also extends to those websites that allow third parties access to post content by providing access through a portal. *Directory Assistants*, 884 F. Supp. 2d at 451. The immunity covers information that the defendant does not create as an information content provider. *Nemet*, 591 F.3d at 254. "A publishing website is immune under the CDA even when given notice that it has published false information." *Baldino's*, 88 F. Supp. 3d. at 547 (citing *Zeran*, 129 F.3d at 333). "Neither is immunity lost when the interactive service provider pays a third party for the content at issue, and essentially becomes a 'distributor' of the content." *Nasser v. WhitePages, Inc.*, No. 5:12CV097, 2013 WL 6147677, at *4 (W.D. Va. Nov. 22, 2013) (citing *Zeran*, 129 F.3d at 332). Moreover, "[d]istributors cannot be held liable for defamatory statements contained in the materials they distribute

unless it is proven at a minimum that they have actual knowledge of the defamatory statements upon which liability is predicated." *Zeran*, 129 F.3d at 331.

For example, in *Nasser*, the court found that the defendant was immune from liability when all content posted on the defendant's website originated from third parties. *Nasser*, 2013 WL 6147677, at * 3.  The defendant often purchased the data through contracts or agreements with the third-party data providers, which the court found did not preclude immunity.  *Id.*  Defendants do much the same here; they are an access software provider and operate an interactive computer service because they upload the information onto their servers for their clients to access on the internet.  (*See* Second Am. Compl. ¶¶ 67, 83.)  Although Plaintiffs claim that the content must be produced by third-party users of Defendant's website, Defendants' status as an interactive computer service is not lost merely because they have purchased the data or edit it like a publisher or distributor in its traditional capacity.  *See Nasser*, 2013 WL 6147677, at *4; *see also Zeran*, 129 F.3d at 330 ("[L]awsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone or alter content—are barred.").  Thus, Defendants meet the definition of an interactive computer service.

Second, an "information content provider" is "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service."  § 230(f)(3) *see also Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1162–63 (9th Cir. 2008) (finding that "development of information" requires "material[]

state that Defendants have been "publishing inaccurate and/or incomplete public records and criminal information." (*Id.* ¶ 94.) Plaintiffs treat Defendants as if they are the publisher and distributer of third-party content. Section 230 precludes this Court from entertaining Plaintiffs' claims treating Defendants as publishers. *See Zeran,* 129 F.3d at 330. There is no doubt that Defendants do not create the content—Plaintiffs admit in their Second Amended Complaint that the convictions and other information included on Defendants reports are derived from other information content providers such as courts and other repositories of this information. Although Plaintiffs allege that Defendants manipulate and sort the content in a background check report, there no explicit allegation that Defendants materially contribute to or create the content themselves.

## IV.   CONCLUSION

In sum, the Court finds § 230 immunity can apply to FCRA claims and Defendants qualify for the immunity. Accordingly, the Motion for Judgment on the Pleadings will be granted.

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
Senior United States District Judge

Date: May 19, 2021
Richmond, Virginia